### Bayard Holmes v. Joseph T. McKennan.

#### Gen. No. 4,422.

1. SET-OFF—*burden of proof to establish.* The burden of proof to establish a set-off by a preponderance of the evidence, rests upon the defendant.

2. SET-OFF—*how amount of, to be proven.* Items constituting the alleged set-off should be proven and a witness should not be permitted to testify as to the sum total of various items unspecified which constitute the set-off relied upon.

3. RECOUPMENT—*when defendant may recover excess of, over plaintiff's claim.* A defendant is entitled to recover damages in excess of the plaintiff's claim made in assumpsit, where it appears that the subject-matter of such recoupment arose out of the same subject-matter as that upon which the plaintiff sued.

Holmes v. McKennan.

Action of assumpsit. Appeal from the Circuit Court of Rock Island County; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed April 25, 1905.

FOSTER & BRADLEY and JOHN C. STETSON, for appellant; PHILIP S. BROWN, of counsel.

SEARLE & MARSHALL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a suit brought by Bayard Holmes against Joseph T. McKennan in the Rock Island Circuit Court to recover for the services of plaintiff, a surgeon, in performing an operation upon defendant's wife. Defendant pleaded the general issue, and also a plea of set-off consisting of the common counts, and also various special pleas, some in set-off, and some in recoupment, all based upon alleged negligence and lack of skill in the conduct of the operation and in the subsequent care of the patient. Upon a trial defendant recovered a verdict against plaintiff for $1,000. A motion was interposed by plaintiff for a new trial, which was denied. Judgment was rendered in favor of defendant upon the verdict and plaintiff appeals.

The proofs bearing upon plaintiff's cause of action and defendant's defense, tend to show the following state of facts: Plaintiff had his office in Chicago and made a specialty of surgery. Defendant lived at Blue Island in Cook County and his wife was ill with a cystic tumor. Her attending physician was Dr. Seim. Upon the advice of Dr. Seim plaintiff was called in consultation. He advised an operation and the removal of the tumor, and told defendant his charge for performing the operation would probably be $250. Defendant paid him for that consultation, and plaintiff returned to Chicago. Thereafter defendant and his family decided to have the operation performed. Dr. Seim sent for plaintiff to come and perform the operation. Plaintiff took with him an assistant, Dr. Wilson. Dr. Seim was present, and also another surgeon and a nurse. Plaintiff made the incision and removed the tumor. Dr.

Seim held open the sides of the incision during the operation. Dr. Wilson handled what are called sponges, namely, strips of medicated gauze of various sizes specially prepared for that use. During the process of removing the tumor it broke, and much pus and blood was shed in the cavity. These medicated gauze sponges were used before the tumor broke in absorbing the blood from the wound. After the tumor broke the sponges were wrung in hot water and put into the cavity to absorb the pus and blood, and then removed and others used, until that result was accomplished. After the tumor had been removed, the blood vessels opening into the cavity tied up, the flow of blood stopped and the cavity cleansed, a large piece of medicated gauze, or a sponge, was pressed into the cavity with its outer edges extending outside the wound. This was called a handkerchief. Other pieces of gauze were then packed inside the handkerchief until it was full. Then the wound was in part closed. The purpose of the handkerchief was to absorb further discharges of blood and to maintain drainage. The proof shows that after the lapse of a certain period of time it was the duty of the attending physician gradually to remove the contents of the handkerchief and then the handkerchief itself, and then to insert other pieces of gauze to establish secondary drainage. After the operation was completed plaintiff returned to Chicago and never afterwards saw the patient, except that some little time thereafter being in Blue Island in attendance upon another patient, he called to see how Mrs. McKennan was getting along. Dr. Seim, who had been the physician in charge prior to the operation, continued as physician in charge thereafter. The patient measurably recovered, but was not fully restored to health. Plaintiff sent his bill to defendant for $225, for the operation, and received numerous letters from defendant in which he promised to pay. Defendant and his wife removed to Rock Island. Before his removal Dr. Seim gave directions for the further treatment of Mrs. McKennan, which were followed for some time. She did not fully regain her

health, and a physician in Rock Island was called. He found her suffering from a fistula opening in the abdominal wall, discharging pus. He caused her to be removed to a hospital in Rock Island, where he and another surgeon dilated the opening, and while they were going through that process a piece of gauze worked out through the opening, and not very long thereafter the wound healed and the patient slowly improved.

It is the theory of defendant that this was one of the sponges placed in the wound by plaintiff to absorb the pus and blood, and negligently and unskillfully left there. By a special verdict the jury found that plaintiff or his assistants placed that gauze in the wound. If this special verdict means that plaintiff or his assistants, while performing the operation, left that piece of gauze in the wound, we are of opinion such finding was not warranted by the proof. Not only did plaintiff testify that he removed all the gauze he placed in the wound up to the time he inserted the handkerchief, but Dr. Wilson testified that it was his special and only business to handle the sponges, hand them to plaintiff, and keep track of them, and that he personally observed and knows that every sponge inserted before the insertion of the handkerchief was removed; and also that no piece of gauze of the dimensions stated by the Rock Island physicians as removed from the fistula opening, in the hospital at Rock Island, was used at the time of the operation in Blue Island. Moreover, the insertion of this gauze after the tumor broke was before the tumor was removed, and it is hardly conceivable that in the subsequent process of entirely removing the tumor and cleansing the cavity anything could have been left therein. No witness testified that any gauze was then left in the cavity. Dr. Seim remained in subsequent control of the patient, and the proof shows that a certain number of days after the operation it would be his duty to remove the contents of the handkerchief and the handkerchief itself, and then to insert other pieces of gauze to establish secondary drainage. Dr. Seim was not called, and there is no proof what

he did in that regard. It was for defendant to establish his claim of set-off by a preponderance of the evidence, and we are of opinion that the preponderance of the evidence in this record is that the piece of gauze in question was not left in the cavity at the time of the operation. If the special verdict means that Dr. Seim placed this gauze in the wound when establishing secondary drainage a week or two thereafter, and that he is to be treated as plaintiff's assistant at that time, then we are of opinion that that conclusion is not warranted, for the reasons hereinafter stated.

The case was tried on behalf of defendant, and instructions were requested by defendant and given, on the theory that in the absence of any express contract to the contrary plaintiff was bound not only to perform the operation in a skillful manner, but also thereafter to attend the patient until she was restored to health or he was sooner discharged; and that if the sponge found in the abdominal cavity during the treatment at Rock Island was inserted by Dr. Seim after plaintiff left the patient, still plaintiff would be responsible therefor in the absence of an express contract that he was not to continue to attend the patient. In our judgment this theory is not warranted by the facts of this case. Dr. Seim was the physician in regular charge of the patient before plaintiff was called in consultation, and remained in charge of the patient after plaintiff had performed the operation and departed. It is entirely clear to us that plaintiff was first called merely to advise what should be done and was next called to perform the operation which he advised, and that neither defendant nor plaintiff expected that he would thereafter continue in the treatment of the case, and that he was not employed for any such purpose.

Defendant testified that he should judge he had expended $1,200 or $1,500 in the subsequent treatment of his wife. The court denied a motion by plaintiff to exclude this answer, and plaintiff excepted. We hold this ruling was erroneous. Defendant should have been required to state

the various items of expense to which he had been put, either precisely or as nearly as he could remember them. Permitting him to state a lump sum in this way gave him an opportunity to include items for which plaintiff could not be responsible, and deprived plaintiff of the opportunity of objecting to such items of expense.

The question is raised whether under the state of facts claimed by defendant he had a right to show his damages, if any, under pleas of set-off and recover an affirmative judgment if they exceeded the amount of plaintiff's bill, or whether he could only use the testimony by way of recoupment to defeat in whole or in part plaintiff's claim for compensation. Edwards v. Todd, 1 Scam. 462, was assumpsit to recover a sum agreed to be paid for the transportation of certain merchandise. Defendants gave notice, under the general issue, that they would prove, by way of set-off, that part of the goods agreed to be transported, exceeding in value the whole of plaintiff's claim, was lost and destroyed through the negligence and carelessness of plaintiff. The court said the gist of the right to make a set-off arose from a failure of plaintiff to perform that part of his contract which required him to deliver the lost goods as well as those not lost; that the claim did not partake of that uncertain character which marks cases of unliquidated damages sought to be recovered in actions purely *ex delicto*, and that damages arising purely *ex delicto* were not intended to be embraced within the words, "claims or demands" in the statute relating to set-off; but that those words are to be confined to such damages as arise from contracts or agreements expressed or implied. Nichols v. Ruckells, 3 Scam. 298, was a suit on an account. One charge by plaintiff was for the rent of a mill under a written contract, wherein plaintiff agreed to do certain things. One item of defendant's set-off, greatly exceeding plaintiff's claim, was for a certain loss occasioned to defendant by failure of plaintiff to keep said written contract. It was objected that evidence of this set-off was inadmissible, because it was in the nature of unliquidated damages. The objection

was overruled, and defendant had a judgment for $61.14. It was held that the words, "claims or demands" in the statute relating to set-off, embraced all cases arising out of contracts express or implied, and that this set-off arose out of the contract embraced in plaintiff's claim, and the evidence was properly admitted. Kaskaskia Bridge Co. v. Shannon, 1 Gilm. 15, was assumpsit upon certain drafts or orders. Defendants under a plea of non-assumpsit, gave notice that they would show, by way of set-off, that said drafts were given for the building of a bridge by plaintiff, and that plaintiff so unskillfully and defectively performed the work that the bridge was wholly valueless and was lost to defendants, and that thereby defendants were damaged in a sum far in excess of the amount of the orders. The court refused to admit proof of the matter stated in the notice. Plaintiff had judgment, and defendants appealed. It was held that the matter contained in the notice of set-off, being a claim for unliquidated damages arising *ex contractu*, constituted a good claim of set-off under the statute, and that the court erred in refusing to admit the testimony. Hawks v. Lands, 3 Gilm. 227, was assumpsit. A demurrer was sustained to a plea of set-off which alleged a breach of a certain covenant in a deed given by plaintiff to defendant. It was held this demurrer was properly sustained, because unliquidated damages arising out of contracts or torts totally disconnected with the subject-matter of plaintiff's claim, are not such claims or demands as constitute a subject-matter of set-off under the statute; and that the cases of Edwards v. Todd, *supra*, and Nichols v. Ruckells, *supra*, had only gone the length of deciding that damages arising out of the contract on which the suit is brought may be set-off, and that that rule could not be extended so as to include unliquidated damages arising out of contracts totally disconnected with the subject-matter of plaintiff's claim. In Sargeant v. Kellogg, 5 Gilm. 273, it was held that unliquidated damages arising out of contracts, express or implied, may be set-off in actions *ex contractu*, but not where the claim for unliquidated damages is totally

unconnected with plaintiff's cause of action.  Sanger v. Fincher, 27 Ill. 346, was a bill in equity, but the subject of set-off was discussed.  It was held that the statute did not limit the right of set-off to liquidated claims or demands, and that the construction placed upon the act is that where the damages are unliquidated, the claim or demand should relate to the transaction out of which the controversy has grown, and that unliquidated damages arising out of the same transaction may be set-off under the statute.  In Springdale Cemetery Association v. Smith, 32 Ill. 252, a suit to recover a balance claimed to be due under a contract to erect a cemetery vault, defendants asked the court to instruct the jury that if they believed from the evidence that defendants had suffered damage from the default or want of care and skill of the plaintiffs in performing such contract, and that such damage exceeded the . amount plaintiffs would otherwise be entitled to recover, the jury should find for defendants the amount of the excess.  It was held the trial court erred in refusing that instruction, although the question here involved was not discussed, but it was taken for granted in the opinion that in such case defendants would be entitled to recover an affirmative judgment.  In DeForrest v. Oder, 42 Ill. 500, it was held that a plea of set-off was defective which offered to set off unliquidated damages growing out of a breach of a contract, without alleging that they grew out of and were a part of the contract sued upon.  It was there said that such damages arising out of contracts or torts not connected with the subject-matter of the suit, do not constitute a proper set-off under our statute, and that there was no averment in the plea that the matter there set up by defendant was connected with the matter upon which plaintiff brought suit.  In Clause v. Bullock Printing Press Co., 118 Ill. 612, it was held that unliquidated damages arising out of a contract unconnected with the subject-matter of plaintiff's suit were not the subject of set-off.  In Higbie v. Rust, 211 Ill. 333, an action of assumpsit, defendant, under the general issue, gave notice of set-off.  The court excluded evi-

dence of a set-off, and plaintiff recovered. It was there said of defendant: "The latter seeks to offset unliquidated damages which he charges resulted from the violation of an entirely distinct and independent contract. Such unliquidated damages could not be offset, as they grew out of an alleged breach of a contract other than those sued upon, and in nowise connected therewith." In Hartshorn v. Kinsman, 16 Ill. App. 555, this court held that unliquidated damages which do not arise out of the contract or cause of action sued upon, are not a proper subject of set-off; that in order that unliquidated damages be set off, they must arise out of the transaction upon which the suit was brought. In Weaver v. Penny, 17 Ill. App. 628, this court applied the same rule. That was assumpsit on a promissory note, given for the price of sheep sold by plaintiff to defendant. Defendant claimed that the sheep were warranted sound and free from disease, and that they were in fact diseased, and many of them died, and the disease was communicated to cattle of defendant, and resulted in the death of several of the cattle. Defendant claimed damages for breach of the warranty, and sought to recoup or set off the damages. There was a stipulation that all evidence proper to go to the jury under any proper special plea might be given under the general issue. The trial court held in instructions that the defendant could not recover an affirmative judgment against plaintiff for damages occasioned by a breach of the contract of warranty, but could only recoup to an amount not exceeding plaintiff's claim for principal and interest upon the note. It was held that these rulings were erroneous, but the judgment for plaintiff was affirmed for other reasons. In South Chicago City Railway Company v. Workman, 64 Ill. App. 383, it was held that in an action for wages, defendant may set off damages occasioned by the negligence of plaintiff in his employment, and that defendant may have judgment for any balance due; and that the fact that the damages were unliquidated is no obstacle to setting them off, when they grow out of the same subject-matter as the demand against which they are offered. The

trial court refused a proposition of law that defendant could set off against the sums it owed plaintiff any sums due from plaintiff to defendant because of damage to its property caused by plaintiff's negligence in the performance of his work. It was held the court erred in refusing this proposition. In Scudder-Gale Grocer Co. v. Russell, 65 Ill. App. 281, plaintiff sold defendant coffee and fruit jars, the coffee to be delivered immediately, and the fruit jars within one month. Plaintiff sued for the price of the coffee, and defendants sought to set off the damages they had sustained by reason of the non-delivery of the fruit jars, and defendants recovered a judgment for $25.05. The court said: "Inasmuch as these damages, though unliquidated, were occasioned by a breach of the contract sued upon, the right of set-off, and therefore of recovery by the appellees of the excess due him, seems to be unquestionable."

In some of the earlier of the foregoing cases, there is language used which does not at all times maintain clearly the distinction between the recoupment and set-off. There are some other cases in this State where the distinction is not clearly preserved, or where the principles laid down in the foregoing cases do not seem to be closely followed. Nevertheless we conclude that the rule stated in the authorities above cited is the law of this State. The amended third and fourth pleas of set-off in this case allege that the defendant employed plaintiff as a physician and surgeon to treat his wife, and that plaintiff entered upon the treatment and performed the operation so negligently and unskillfully, that by and through his want of skill and care, the sickness and malady of defendant's wife was greatly aggravated, and she became greatly disordered and weakened in body, and so remained for a long time, and that defendant was thereby obliged to incur a great indebtedness to other physicians and surgeons, nurses and servants, in her care, causing him damage in the sum of $5,000, which he offered to set off against plaintiff's claim; and he averred that the several causes of action upon which plaintiff has declared, are claimed by plaintiff for, upon and

out of the same subject-matter set forth in the plea; and defendant therein prayed judgment for the balance. We conclude that under said amended third and fourth pleas, defendant was entitled to recover unliquidated damages growing out of the same subject-matter and contract upon which plaintiff brought suit, if the proof sustained said pleas. Defendant could not recover under the amended second plea, which was the common counts, because they did not show that the matter sought to be set off arose out of the same subject-matter as that upon which plaintiff sued.

But for the other reasons stated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*