HARTFORD ACCIDENT AND INDEM-NITY COMPANY, a Connecticut Corporation, Plaintiff-Counterdefendant,

v.

BOISE CASCADE CORPORATION, a Delaware Corporation, Defendant-Counterplaintiff.

No. 78 C 3721.

United States District Court, N. D. Illinois, E. D.

May 9, 1980.

Thomas L. Browne, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff-counterdefendant.

John W. Rotunno, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for defendant-counterplaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action arises out of the performance by plaintiff Hartford Accident and Indemnity Company ("Hartford") of a construction contract with Boise Cascade Corporation ("Boise"). The undisputed facts are as follows. On July 17, 1974, Boise retained McCollough Construction Company ("McCollough") to construct additions and improvements to Boise's Corrugated Container Division manufacturing plant located in LaPorte, Indiana. The contract between Boise and McCollough specified that the construction was to be substantially complete by late March, 1975. As required by Boise, McCollough obtained a performance bond and a labor and material payment bond from Hartford. Pursuant to these bonds, Hartford assumed the role of a surety, guaranteeing that if McCollough defaulted on the contract, it either would remedy the default, complete the contract itself, or arrange for the completion of the contract by another contractor.

On April 22, 1975, Boise formally notified Hartford that McCollough had defaulted on the construction contract and that it would hold Hartford liable in accordance with the performance bond.[1] Later, in the summer

---

1. This formal notification followed a telegram and letter by the Assistant Secretary of Hartford on April 16–17, 1975, advising Boise that McCollough was having difficulty in meeting its outstanding obligations.

of 1975, Hartford and Boise entered into a separate agreement with respect to completion of the project. Under the terms of this agreement, Hartford agreed to secure performance of all work not completed under the original contract. In return, Boise agreed to pay to Hartford the unpaid balance of the contract price as it became due under the terms of the original contract. The agreement expressly provided that except as amended, all terms and conditions of the original contract were to remain in full force and effect. In addition, the agreement reserved to Hartford and Boise any rights that each might have against the other under the original contract.

Thereafter, Hartford paid all valid claims of McCollough's materialmen, procured the necessary labor and materials for completion of the LaPorte project, and in fact did secure the completion of that project.[2] Boise, however, has refused Hartford's demand for payment of the remaining contract balance of $261,571.96. As a result, Hartford filed this diversity action seeking recovery of the sum due under the contract. Boise has counterclaimed, alleging that Hartford's failure to secure completion of the construction project by the scheduled date of late March, 1975, has caused it to suffer losses totalling $560,842.44. Thus, Boise seeks recovery of this amount as offset by the amount due to Hartford for completion of the project.

The case now is before the Court on Hartford's motion under Fed.R.Civ.P. 56(a) for summary judgment on its claim for payment of the contract balance. In addition, Hartford asks the Court to enter this ruling as a final judgment pursuant to Fed. R.Civ.P. 54(b). For the reasons that follow, the Court finds it appropriate to grant both of Hartford's requests.

### I. Summary Judgment

The Seventh Circuit has observed that "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir. 1970). The Court is mindful that it is not its function to resolve disputed issues of fact—particularly those which involve questions of motive or intent—in a trial by affidavit. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10–11 (7th Cir. 1979). Nonetheless, it is the function of the Court to make a discerning inquiry into the allegations and supporting documentation to determine whether there are any factual disputes which require resolution by trial. Any doubts must be resolved against the moving party. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961).

Applying these standards, the Court is satisfied that there remain in dispute no facts material to Hartford's claim. Boise does not dispute Hartford's allegations that it completed the construction project at LaPorte, and that there remains an outstanding contract balance of $261,571.96. Indeed, the prayer for relief in Boise's counterclaim explicitly recognizes that any recovery it obtains thereunder will be diminished by the amount it owes to Hartford. Boise, however, seeks to defeat the motion for summary judgment by construing Hartford's right to payment upon completion as subject to any claims against Hartford or McCollough.

Under Indiana law, however,[3] the construction of a written contract is a ques-

---

2. The parties are in dispute as to the exact date of substantial completion of the project. Hartford states that the project was substantially complete as of November, 1975, whereas Boise contends that certain aspects of the project were not finished until early in 1977. This dispute, however, is irrelevant to the issues raised by Hartford's motion for summary judgment.

3. The parties apparently agree that Indiana law governs Hartford's claim. In light of this intended choice of law, the Court will apply Indiana law. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975). The Court observes that it would reach the same result upon an independent examination of Illinois choice of law principles. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct.

tion of law rather than one of fact. *McGann & Marsh Company, Inc. v. K. & F. Mfg. Co.*, 385 N.E.2d 1183, 1187 (3d Dist., Ind.App.1979); *Kleen Leen, Inc. v. Mylcraine*, 369 N.E.2d 638, 640 (1st Dist., Ind. App. 1978). Only where the Court determines that the contract is ambiguous in that certain terms are susceptible of more than one reasonable interpretation is a question of fact raised. *Mylcraine*, 369 N.E.2d at 641. In support of its position, Boise cites to the provisions of its agreement with Hartford which reserve any claims under the original contract and which incorporate the provisions of the original contract. The Court, however, finds no ambiguity in either the agreement between Hartford and Boise or the original contract which it incorporates by reference. Boise can point to no clause of the original contract which in any way suggests that Hartford's right to payment upon completion is conditional upon completion of the project within the specified time period. The clause which establishes the projected completion date is silent as to any such contingency. Moreover, Article 4 of the original contract provides for insertion of any "provisions for liquidated damages relating to failure to complete [the project] on

time." Yet, no such provisions were inserted.[4] Indeed, Boise's inability to make specific reference to any points of ambiguity in the original contract is eloquent testimony to the clarity of the contract.

Although Boise now might wish otherwise, the Court believes it clear that the various agreements between Boise and Cascade do not condition Hartford's right to payment on its completion of the project within the specified time period. Since there are no other questions of fact with respect to Hartford's right to payment, the Court grants Hartford's motion for summary judgment on its claim for payment of the outstanding balance of the original contract.

## II. *Final Judgment Under Rule 54(b)*

Since this action involves multiple claims, the Court's grant of summary judgment on Hartford's claim may assume finality at this time only upon an express determination under Rule 54(b) that there is no just reason for delay in the entry of final judgment.[5] As the Supreme Court recently recognized in *Curtiss-Wright Corp. v. General Electric Co.*, —— U.S. ——, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), there are two

1020, 85 L.Ed. 1477 (1941). Under any of the various permutations of the Illinois rule, Indiana law would govern this action. *Compare Repsold v. New York Life Insurance Co.*, 216 F.2d 479 (7th Cir. 1954) (place of performance governs questions of performance); *Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E.2d 460 (1944) (where place of execution and performance differ, place of execution governs); *and P. S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125 (7th Cir. 1972) (when execution and performance both occur in more than one jurisdiction, the "most significant contacts" doctrine is used to determine the applicable law).

**4.** Although Boise does not so argue, it might have asserted that the provision in Article 14 of the original contract stating that payment would be forthcoming when the contract is "fully performed" impliedly conditions payment upon performance of every aspect of the contract, including completion by the scheduled March, 1975, date. The Court, however, would consider such an interpretation to be a tortured one. This reference to full performance more reasonably may be construed as

conditioning full payment upon completion of construction at the LaPorte site.

**5.** Rule 54(b) provides:

(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

components in the inquiry into whether there exist reasons to delay the entry of final judgment on one claim in a multiple-claim case.[6] First, the Court must consider whether certification under Rule 54(b) would offend the "historic policy against piecemeal appeals." *General Electric Co.,* —— U.S. at ——, 100 S.Ct. at 1462, *citing Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956). This inquiry takes into consideration such factors as the separability of the adjudicated claim from those remaining in the case; whether certification would require the appellate court to decide the same issues more than once in the event of subsequent appeals of the remaining claims; whether the need for appellate review might be obviated by future developments in the district court; and whether certification and immediate appeal of an adjudicated claim might impede unduly the progress of the trial of the remaining claims. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2659 at 78–81. Second, the Court must examine the equities in a given case to ascertain whether certification—or the failure to certify—would result in injustice to any of the parties involved. *General Electric,* —— U.S. at ——, 100 S.Ct. at 1465. Whereas a reviewing court will scrutinize a district court's assessment of the first component, it will accord substantial deference to the district court's judgment with respect to the second inquiry, disturbing its assessment of the equities only if clearly unreasonable. *General Electric.*

▌ With respect to the first inquiry, the Court finds that Rule 54(b) certification in the instant case would not be inconsistent with the interests of sound judicial administration. Although Boise's counterclaim arises from the same general transaction as does Hartford's claim and thus may be termed compulsory under Fed.R.Civ.P. 13(a), this in itself poses no bar to certification. *Cold Metal Process Co. v. United Engineering,* 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956). Indeed, despite its compulsory nature, the claim and counterclaim herein raise distinct factual questions. Whereas Hartford's claim involves the question of whether it finished the project and the amount due as a result thereof, Boise's counterclaim raises the issue of when Hartford finished the project and the extent of damage suffered as a result of any delay in completion. As a result of this separability between the claim and counterclaim, it is unlikely that certification would result in duplicative appeals. For the same reason, it is doubtful that appellate review would be obviated by future developments at the district court or that trial of the counterclaim would be delayed by an immediate appeal of the grant of summary judgment on Hartford's claim. Thus, the Court finds that these judicial considerations do not militate against certification.

Conversely, the Court believes that the equities of this case weigh in favor of certification. Under Indiana law, the prejudgment rate of interest is fixed by statute at eight percent. Ind. Code Ann. § 24–4.6–1–103(b) (Burns).[7] This interest rate is lower than that available in the open market. Until the Court enters an order of final judgment, however, Hartford could be awarded only the statutory rate of prejudgment interest. Therefore, failure to certify the order of summary judgment would result in a real financial loss to Hartford until resolution of the counterclaim would con-

---

6. The other prerequisites for Rule 54(b) certification all are satisfied in this case. Wright & Miller, Federal Practice and Procedure: Civil § 2656 at 41–43. This action involves multiple claims, and the court's order of summary judgment has determined with finality the merits of one of the claims. In addition, this is not a situation where certification would be improper because the order is appealable under other statutory provisions. Wright & Miller, *Id.,* § 2658 at 54.

7. Inasmuch as prejudgment interest is a right accorded by Indiana substantive law, the Court considers the Indiana rate to be applicable. *Cf. National Lock Co. v. Hogland,* 101 F.2d 576, 587 (7th Cir.), *cert. denied,* 300 U.S. 665 (1939) (prejudgment interest under Delaware law considered a substantive right).

clude the entire case. Since it is possible that final adjudication of the counterclaim may not occur before the end of the year, this loss could be significant. Moreover, there has been no allegation by Boise that Hartford is insolvent, and that it would be impossible for Boise to recoup the money paid out on Hartford's claim should Boise prevail on its counterclaim.[8] Thus, the balance of the equities, in conjunction with the considerations of sound judicial administration, persuades the Court that certification of the summary judgment order is appropriate. In *General Electric*, the Supreme Court on facts essentially indistinguishable from those herein affirmed the district court's decision to certify under Rule 54(b) an order of summary judgment.[9]

Accordingly, the Court grants plaintiff's motion for summary judgment in the amount of $261,571.96.[10] In addition, the Court certifies this order as a final judgment pursuant to Rule 54(b). The Court, however, will heed the suggestion in *General Electric*, —— U.S. at —— n. 3, 100 S.Ct. at 1467 n. 3, and stay enforcement of the judgment in accordance with Fed.R.Civ.P. 62(h). As a condition of this stay, the Court orders that Boise within 15 days deposit the amount of judgment with the Clerk of the Court. The Clerk is directed to invest the funds in a manner agreed to by the parties, or if the parties cannot so agree, to pur-chase short-term high-yield government obligations and hold them pending the resolution of the counterclaim. It is so ordered.

---

**8.** Nor is Boise's solvency a factor herein. If Boise's financial outlook were so tenuous as to endanger Hartford's ability to collect on its judgment in the future, this would be a factor weighing in favor of certification. There is no suggestion, however, that Boise is in such a position. The fact that Boise evidently is solvent, on the other hand, does not militate against certification. *General Electric*, —— U.S. at ——, 100 S.Ct. at 1467.

**9.** In *General Electric*, the district court had entered summary judgment for plaintiff in the amount of $19 million for the balance due on certain contracts. Defendant General Electric had counterclaimed in two counts for $53.9 million in damages. The district court, finding that the claim and counterclaims were distinct and would not foster piecemeal litigation, certified its order as a final judgment under Rule 54(b) due to the financial loss that the plaintiff would suffer in the absence of a final judgment as a result of the differential prejudgment and market rates of interest. The Court of Appeals for the Third Circuit reversed, in large measure on the ground that the possibility of a set-off presented by defendant's counterclaims weighed heavily against certification. In reversing the court of appeals, a unanimous Supreme Court refused to accord controlling weight to the existence of the counterclaims. Rather, the Supreme Court found that on the facts there presented, the district court was within its discretion to certify its order under Rule 54(b).

**10.** This award does not include any prejudgment interest, for the reason that there remains in dispute the exact date upon which substantial completion was accomplished. *See* note 2, *supra*. It is from this point, when there was an "account closed," that prejudgment interest must be assessed. *Urbanational Developers, Inc. v. Shamrock Engineer, Inc.*, 372 N.E.2d 742, 750 (3d Dist., Ind.App.1978).