SCHIEFFELIN & CO., A Delaware
Corporation, Plaintiff-Appellee,
Cross-Appellant,

v.

VALLEY LIQUORS, INC., An Illinois
Corporation, Defendant-Appellant,
Cross-Appellee.

Nos. 85–2116, 85–2197.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1986.

Decided June 26, 1987.

Joseph E. Tighe, Richard J. Prendergast, Ltd., Chicago, Ill., for defendant-appellant, cross-appellee.

Karen K. Phillips, Ross & Hardies, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before CUDAHY and
EASTERBROOK, Circuit Judges, and
FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Plaintiff Schieffelin is an importer of liquor and wine. Defendant Valley is a distributor. In 1981 they made an agreement whereby Valley would act as distributor for Schieffelin in several Illinois counties. Schieffelin terminated the agreement in late 1983 and sued Valley for $215,955.84, the unpaid purchase price of wine and liquor purchased from July through December, 1983.[1]

Valley's answer admitted the sales and non-payment, but denied the averment that it owed the money. With its answer Valley filed a motion for leave to file a counterclaim at a later date.

Later, with leave, Valley filed a pleading labeled "Affirmative Defenses and Counterclaims." The first defense and counterclaim involved unsold goods on hand at the close of the distributorship. Schieffelin repurchased them and gave credit, and the claim is moot. The second defense and second counterclaim averred that the distributorship agreement had required

---

1. Jurisdiction is founded on diversity. Valley asserts and Schieffelin does not dispute that Illinois law governs substantive questions.

Schieffelin to supply, to the best of its ability, products ordered by Valley; that orders placed September to November, 1983 had not been filled; that as a result Valley was unable to fill orders and lost good will of its customers. Except for an averment that the amount in controversy exceeded $10,000, no amount of damage was claimed.

In reply, Schieffelin pleaded various defenses, including provisions of the agreement limiting its obligation to supply goods, and averring that when the orders were allegedly placed, Valley's account was past due.

Schieffelin filed a motion for summary judgment on the complaint. Valley opposed the motion on the ground that issues under the counterclaim remained in dispute, and that as a matter of Illinois law there could be no recovery on the complaint until the set-off claimed in the counterclaim had been determined.

Judge Norgle granted the motion, saying:

> The issues involved in the counterclaim are not so closely related to the plaintiff's claim that summary judgment on the complaint should be delayed until the counterclaim is resolved. Defendant has cited no case to support its argument that plaintiff's failure to fill certain orders is an adequate defense to defendant's refusal to pay for orders which were filled. Secondly, the counterclaim, such as it is, is too vague in its assertion of lost profits to state a legitimate set-off against the plaintiff's claim. Thirdly, the plaintiff's claim arises not only from defendant's obligations under the distributorship agreement, but also from the simple facts that the goods were delivered, and the defendant has admitted that it received them and has not paid for them.

Pursuant to Rule 54(b), F.R.Civ.P., Judge Norgle found no just reason for delay and directed the entry of judgment, with prejudgment interest, for the unpaid price of

the goods, after credit for the repurchase, and judgment was entered as of May 30, 1985.

Schieffelin moved for sanctions on the ground that Valley's denials of liability for the purchase price, based on its claim of Schieffelin's liability for failure to fill orders, were "disingenuous and improperly motivated" and "caused unnecessary delays and increased costs." Judge Norgle denied the motion.

Valley appealed from the judgment and Schieffelin appealed from the denial of its Rule 11 motion for sanctions.

I

The complaint set forth Schieffelin's claim for the unpaid purchase price of goods sold. All factual elements of that claim are undisputed. The counterclaim seeks an unspecified amount of damages for breaches of the distributorship agreement.[2]

Analyzing the complaint and counterclaim vis-a-vis the FEDERAL RULES OF CIVIL PROCEDURE, the appeal does not present much difficulty.

Rule 54(b), F.R.Civ.P., permits the entry of a final judgment on one out of several claims upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. The determination and direction were included in an order in this case.

A Rule 54(b) finality decision is "left to the sound judicial discretion of the district court." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980); *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 948 (7th Cir.1980). The first concern is the judicial administrative interest, such as avoidance of duplicative appellate effort. 446 U.S. at 8, 100 S.Ct. at 1464. Schieffelin's claim is factually and legally distinct from Valley's. There seems to be no possibility that if there were a later

---

**2.** We leave aside for the present the fact that the material in the counterclaim was also pleaded as an affirmative defense.

appeal from a decision on the counterclaim, this court would face any issue for the second time. *See Hartford Acc. & Indem. Co. v. Boise Cascade Corp.*, 489 F.Supp. 855, 859 (N.D.Ill.1980); *Architectural Floor Products v. Don Brann & Assoc.*, 551 F.Supp. 802, 808 (N.D.Ill.1982).

The second concern is with the equities, 446 U.S. at 10–12, 100 S.Ct. at 1466–1467. On its face, Valley's counterclaim created the possibility of a set-off against the amount Valley owed Schieffelin. Although that fact may be significant, it is not controlling. 446 U.S. at 9, 12, 100 S.Ct. at 1465, 1467. Valley's counterclaim asserted a loss of good will resulting from Schieffelin's failure to fill orders, but failed to quantify the damages. Schieffelin asserted defenses which are at least plausible. Judge Norgle's comment concerning the vagueness of the claim of lost profits suggests that it struck him as tactical rather than meritorious. If judgment were delayed, pre-judgment interest ran at 5%, considerably under market rates. *See Curtiss-Wright*, 446 U.S. at 11, 100 S.Ct. at 1466; *Hartford*, 489 F.Supp. at 859. The test is whether we can say that Judge Norgle's conclusion was "clearly unreasonable." 446 U.S. at 10, 100 S.Ct. at 1466. We are unable to do so.

We note that enforcement might have been stayed upon appropriate conditions under Rule 62(h). *Curtiss-Wright*, 446 U.S. at 13 n. 3, 100 S.Ct. at 1467 n. 3; *Omark Industries, Inc. v. Lubanko Tool Co.*, 266 F.2d 540 (2nd Cir.1959); *Curtis Publishing Co. v. Church, Rickards & Co., Inc.*, 58 F.R.D. 594 (E.D.Pa.1973); *Hartford*, 489 F.Supp. at 860. Valley has based no claim of error on the lack of a stay.

Valley has relied on *TPO Incorporated v. Federal Deposit Insurance Corp.*, 487 F.2d 131 (3rd Cir.1973). There the plaintiff's claim was based on ten cashier's checks issued by a defendant bank which became insolvent. The bank liquidator's counterclaim asserted plaintiff's involvement in fraud in the transaction in which the checks were issued. The Third Circuit reversed a judgment summarily entered in favor of the plaintiff. The case is readily distinguishable from the present one and gives us no guidance.

## II

The main thrust of Valley's argument is that under the law of Illinois it is entitled as a defendant to set off against a plaintiff's contract claim any contract liability of plaintiff to defendant. Valley asserts that this is a principle of substantive law so that under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), it controls in a diversity case in federal court. Because this theory would make Valley's claim for damages a defense to Schieffelin's complaint, it would follow that summary judgment should not have been granted on the complaint because there are disputed issues of fact material to the defense.

The suggested rule of Illinois substantive law appears to run counter to a general proposition that "[u]nder the common law, such [mutual] debts do not extinguish one another *pro tanto*, either automatically or by manifestation of election by one party. Either agreement of the parties or judicial action is necessary." *In re Lehigh and Hudson River Railway Company*, 468 F.2d 430, 434 (2nd Cir.1972), *quoting from* 6 WILLISTON, *Contracts* § 887E, at 543 (3d ed Jaeger, 1962).

It is at least arguable that the choice of whether adjudication of a plaintiff's claim of defendant's liability can be separated from adjudication of a defendant's claim of plaintiff's liability is not substantive in nature, but "a definition of judicial unit" and appropriately determined by federal law in a diversity case. *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 373 (3rd Cir.1975), Gibbons, J., dissenting. The district court had so held in the case under review, 64 F.R.D. 135.

*Allis-Chalmers* is the only set-off case coming to our attention in which it had been argued that state law governed. As stated by the majority:

In opposing summary judgment, PECO argues that, as a matter of substantive

law, Pennsylvania's Defalcation Act, 12 P.S. § 601, requires that PECO's counterclaim must be "netted" against AC's main claim; and, accordingly, that no judgment could be entered on the main claim prior to the counterclaim's determination. We neither reach nor resolve this issue.

521 F.2d at 366 n. 13.

The number of decisions in diversity cases which deal with separation of a counterclaim seeking set-off by applying Rule 54(b), without suggesting that state law governs, may itself indicate that Judge Gibbons was correct. *See, e.g., Omark Industries, Inc. v. Lubanko Tool Co.,* 266 F.2d 540 (2nd Cir.1959); *Hartford Acc. & Indem. Co. v. Boise Cascade Corp.,* 489 F.Supp. 855 (N.D.Ill.1980); *Architectural Floor Products v. Don Brann & Assoc.,* 551 F.Supp. 802 (N.D.Ill.1982); *Stauffer Chemical Co. v. Keysor-Century Corp.,* 541 F.Supp. 234 (D.Del.1982); *Curtis Publishing Co. v. Church, Rickards & Co., Inc.,* 58 F.R.D. 594 (E.D.Pa.1973); *cf.* 80 C.J.S. *Set-Off and Counterclaim* § 13(b).

### III

We conclude in any event that there is no principle of substantive Illinois law which operates to reduce or extinguish Schieffelin's claim for goods sold by the amount, if any, ultimately allowed on Valley's claim for loss of good will.

Valley has cited *McGuire v. Bransfield,* 147 Ill.App. 541 (1st Dist.1909) and *Engstrom v. Olson,* 248 Ill.App. 480 (2d Dist. 1928). *McGuire* held in an action for breach of contract, that defendant could seek a set-off of his claim for plaintiff's breach of the same contract. *Engstrom* held a set-off improper in a tort case, and stated "[t]hat a set-off can only be allowed where the original cause of action is based on a contract, express or implied, and the set-off sought to be made must be on a contract, express or implied...." 248 Ill. App. at 484–85. Neither dealt with the question whether judgment could be separately granted on one of the claims. Valley has also cited a statement from *In Re Knight,* 60 Ill.App.2d 457, 208 N.E.2d 679,

681 (1st Dist.1965), "[t]hat where a debtor of the Corporation has a valid claim against the Corporation, it may be used as a set-off against a claim made by the Corporation against the debtor." The case dealt with a petition by a debtor of an insolvent bank to set-off an alleged liability of the bank to the debtor. We think the quoted statement is limited to that context.

In a recent Illinois case, not cited by either party, plaintiff sued for the unpaid purchase price of a racing car sold to defendant. Defendant counterclaimed for damages under a contract whereby plaintiff agreed to provide sponsorship funds in connection with a racing car venture. The trial court entered judgment for plaintiff on his claim, and made the judgment immediately enforceable, finding no just cause to delay. The appellate court affirmed. *Rebaque v. Forsythe Racing, Inc.,* 134 Ill. App.3d 778, 89 Ill.Dec. 595, 480 N.E.2d 1338 (1st Dist.1985).

The appellate court considered Section 2–717 of the UNIFORM COMMERCIAL CODE (ILL.REV.STAT. 1983, ch. 26, ¶ 2–717):

> The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

After citing cases from other jurisdictions, the court said:

> These cases establish the better rule, a rule which furthers the values of certainty and predictability, and is thus consistent with the public interest, *i.e.,* that a seller be entitled to the price of goods accepted, regardless of the buyer's claim under some remote transaction.

89 Ill.Dec. at 598, 480 N.E.2d at 1341.

It is true in our case that the distributorship agreement contemplated sales by Schieffelin to Valley. As to any sale, however, the price, type, and quantity of goods sold resulted from accepted purchase orders and not from the distributorship agreement. We do not deem the claims in our case significantly more closely related than in *Rebaque.* In any event Valley does

not claim to have given notice of its intention to deduct any amount of damages.

, We note further that Illinois, as a matter of procedure, requires a defendant's claim in the nature of set-off or recoupment to be pleaded as a counterclaim, ch. 110 § 2–608(a), and provides for separate adjudication of one claim under a rule almost identical to Federal Rule 54(b), ch. 110A, Supreme Court Rule 304.

Accordingly, we find no principle of Illinois substantive law preventing the result reached by the district court.

### IV

Schieffelin has appealed from the denial of sanctions under Rule 11, F.R.Civ.P., and has asked us to award it attorney's fees and double costs under Rule 38, F.R.A.P. Although Valley does not prevail, we do not consider its pleadings clearly unwarranted under existing law for the purpose of Rule 11, or frivolous for the purpose of Rule 38. Moreover, if Valley's brief has not given us as helpful a presentation of the law as we would like, the same can be said of Schieffelin's.

The judgment and order appealed from are AFFIRMED. No costs allowed to either party.