SHINTOM AMERICA, INC.,
Plaintiff/Counter–Defendant–Appellee,

v.

CAR TELEPHONES, INC. d/b/a Cartel, Inc. and Cartel, Inc. of Maryland, Defendants/Counter–Plaintiffs–Appellants.

No. 94–1201.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1994.

Decided Jan. 20, 1995.

Shelly B. Kulwin (argued) and Michael C. Bennett, Kulwin & Associates, Chicago, IL, for plaintiff-appellee.

Zacarias R. Chacon, Querrey & Harrow; James T. Crotty (argued), Julie A. Hoffman, and Glenn W. Kuchel, Crotty & Associates, Chicago, IL, for defendants-appellants.

Before RIPPLE and MANION, Circuit Judges, and SKINNER, District Judge.*

SKINNER, District Judge.

The plaintiff, Shintom America, Inc. ("Shintom") brought this action to recover the price of goods sold to the defendants, Car Telephones, Inc., d/b/a Cartel, Inc. ("Cartel") and its subsidiary, Cartel, Inc. of Maryland ("Cartel of Maryland"). Of concern to us on this appeal are Counts I, VII and VIII of the complaint, on which the district court allowed plaintiff's motion for partial summary judgment and entered final judgment thereon pursuant to Fed.R.Civ.P. 54(b), there being other claims of the parties remaining unresolved.[1] We affirm the judgment of the district court.

---

* Hon. Walter Jay Skinner, of the District of Massachusetts, sitting by designation.

1. Counts II, III, V and VI were quasi-contractual counts which were dismissed as being incompatible with Counts I and IV, which alleged express contracts. Summary judgment was granted against Cartel of Maryland on Count IV, and final judgment was entered thereon, but no appeal has been taken. Summary judgment was denied with respect to Count IX, a claim on a

The plaintiff is the manufacturer of component parts of car telephones, which it sold to the two defendants and for which it claims not to have been paid. Count I alleges a breach of contract in the failure of Cartel to pay for goods which were the subject of express purchase orders. In Counts VII and VIII, the plaintiff seeks to recover its expenses and attorneys' fees incurred in the prosecution of its contract claims against Cartel and Cartel of Maryland (allowed in Count IV, and not appealed). Cartel asserted, by way of set-off and counterclaim, Shintom's breach of a contract allegedly granting to Cartel an exclusive right to distribute Shintom's products in the State of Illinois. Both defendants deny any obligation to pay attorneys' fees. Both defendants appeal the entry of final judgment under Fed.R.Civ.P. 54(b).

## SUMMARY JUDGMENT

■ Summary judgment shall be rendered if on the record "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment "is a useful device for ... putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact. The opponent, on the other hand, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "We review the district court's entry of summary judgment *de novo*, drawing all reasonable inferences from the record in the light most favorable to the nonmoving party." *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991).

### 1. *Count I.*

■ The plaintiff moved for summary judgment on Count I of the complaint, which sought damages in the amount of $362,902.88. The defendant opposed the motion, asserting that there was a genuine dispute as to certain of the charges, totalling $79,150, and a further dispute concerning an unliquidated set-off arising out of the defendant's claim for the breach of the exclusive distributorship agreement. In order to secure summary judgment forthwith, the plaintiff conceded the disputed amount of $79,150, but argued that the claim for the breach of the distributorship agreement was not a proper subject of set-off under federal and Illinois law.[2] The district judge agreed and allowed summary judgment in the amount of $283,752.88, there being no genuine dispute of material fact remaining at that point. He relied on *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064 (7th Cir.1987), which is precisely on point. Our court held in that case that a claim for a breach of a distributorship agreement may not be set off against a claim for the unpaid purchase price of goods sold, even though the goods were of the same character as those covered by the purported distributorship, as a matter of state and federal law. The opinion in *Schieffelin* contains a comprehensive discussion of the subject, which need not be repeated here. The defendant has not cited, and we have not found, any case which impeaches in any way the authority of *Schieffelin*. (In fact, the defendant itself cited *Schieffelin* in support of its opposition to the plaintiff's motion to dismiss the counterclaim). We need go no further. Summary judgment was rightly allowed as to Count I.

### 2. *Counts VII and VIII.*

■ The plaintiff, having prevailed against Cartel (Count I) and against Cartel of Maryland (Count IV) for the unpaid purchase price of goods sold, seeks, under Counts VII and VIII, to recover its expenses and attor-

---

promissory note. Cartel's counterclaim remains outstanding.

**2.** At one point, the defendant had offered to give a credit of $101,680 to settle the claim for the alleged breach of the exclusive distributorship. As a settlement offer it was rightly disregarded.

neys' fees incurred in the prosecution of those claims.

Cartel and Cartel of Maryland each filed with the plaintiff an application for credit in connection with their purchases of the plaintiff's product. Each application contained a separate section at the end, headed "GUARANTEE," in the following form:

## SIGNATURE REQUIRED BY ALL APPLICANTS

In order to induce Shintom and its affiliates, successors and assigns (collectively the "company"), to sell products, grant extensions of credit or other financial accommodations ... to the above named Buyer, all at the Company's discretion, each of the undersigned, jointly and severally, unconditionally guarantees to the Company the prompt and unconditional payment when due ... of all obligations and liabilities, presently existing or hereafter arising ... of the above named Buyer to the Company, *including but not limited to all late charges, expenses and legal fees.*

The undersigned waives (a) *notice of the acceptance of this guarantee;* protest [etc.] ... and (c) trial by jury and any set-off or counterclaim he may have against the Company.

I understand that the above information is given for the purpose of obtaining credit and I certify that to the best of my knowledge the above information is complete and accurate as of the date of this application. The undersigned releases [all providers of credit information] ...

[Emphasis supplied.]

Each application was signed by the defendant corporations by their chief operating officer.

In another section of the application, after the list of references, there appears the following legend:

D. This is not a contract. Shintom reserves the right to refuse your application and return your application. You will be provided a complete contract if this application is approved.

The defendants argue that since there was no subsequent formal contract, there was no acceptance of the "guarantee," and hence no liability. They say there was no evidence that they intended to be bound by the "guarantee." The plain answer to this argument is that the application for the extension of credit was in fact accepted, and credit was extended, providing good consideration for the defendants' undertaking. Notice of acceptance was expressly waived. In such circumstances, the defendants' signatures are adequate evidence of an intention to be bound. The defendants have offered no authority to challenge the propriety of the district court's allowance of the plaintiff's motion for summary judgment on these counts. In our opinion allowance was required upon the evidence of an unambiguous contract, concerning which there was no genuine issue of material fact. *General Elec. Capital Corp. v. Equifax Services, Inc.,* 797 F.Supp. 1432, 1447 (N.D.Ill.1992).

## ENTRY OF FINAL JUDGMENT

■ Fed.R.Civ.P. 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, ... the court may direct the entry of final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The district court, pursuant to the standards established by *Curtiss–Wright Corporation v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), determined that the defendant Cartel's counterclaim was separate and independent from the plaintiff's claim and that there was no just reason for delay in the entry of judgment. Treating these claims as separate and independent is in accord with the test we imposed in *OCD Communications Corp. v. Wenruth Investments,* 826 F.2d 509, 512 (7th Cir.1987) and conforms to our holding in *Schieffelin Co. v. Valley Liquors, Inc., supra,* which is again precisely on point, except as to one factor. In that case we held that a claim and counterclaim virtually identical to those involved in this case were separate and independent, and there was consequently no risk of duplicative or piecemeal appellate effort. *Id.,*

1066. We held that "[a] Rule 54(b) finality decision is 'left to the sound judicial discretion of the district court.'" (Quoting from *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466.) *Id.,* at 1065.

The defendant Cartel raises one consideration which may not have been present in *Schieffelin:* namely, the precarious financial condition and potential insolvency of the plaintiff. The impact of the insolvency of the plaintiff is a factor to be weighed against certification, as a matter of equity, according to the Court's dictum in *Curtiss–Wright,* 446 U.S. at 12, 100 S.Ct. at 1467, lest the defendant lose the benefit of set-off on its counterclaim. The district judge did weigh this circumstance, but came to the conclusion where the plaintiff's claim was for goods sold and delivered, entry of final judgment was appropriate, quoting *Soo Line RR Co. v. Escanaba & Lake Superior RR Co.,* 840 F.2d 546, 551 (7th Cir.1988):

> Courts regularly require the payment of undisputed debts while the parties litigate their genuine disputes.... This reflects the limits of the common law right of set-off between debts.

In view of this reference the district judge looked to the substantive law of Illinois as an aid to the resolution of the federal question. In *Rebaque v. Forsythe Racing, Inc.,* 134 Ill.App.3d 778, 89 Ill.Dec. 595, 480 N.E.2d 1338 (1st Dist.1985), the Illinois court held that an undisputed claim for the price of goods sold and delivered was entitled to immediate entry of judgment, even though the claimant did not have sufficient assets in the United States to satisfy a potential judgment on an unrelated counterclaim.

The defendant has cited no case, and we have found none, that suggests that the approach taken by the district court was an abuse of discretion in the circumstances of this case.

## ORDER

The judgment of the district court is AF-FIRMED. Costs shall be taxed to the defendants.